UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YURY NIKOLAY KOROTKIKH,

    Petitioner,

v.

PAMELA BONDI, et al.,

    Respondents.

C25-2750 TSZ

ORDER

THIS MATTER comes before the Court on a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, docket no. 1. Having reviewed the petition, respondents' return, petitioner's traverse, and the submitted declarations and exhibits, the Court GRANTS the habeas petition for the reasons set forth in this Order.

**Background**

Petitioner Yury Nikolay Korotkikh was born in 1970 in what is now the Republic of Kazakhstan, but which was at that time part of the Union of Soviet Socialist Republics ("U.S.S.R."). See Pet. at 6 (docket no. 1). In 1989, he arrived in the United States as a refugee and, in 1990, he was granted lawful permanent resident status. Id. In 1994, petitioner was convicted in Oregon of attempted use of a dangerous weapon, for which his sentence was 45 days in jail and 36 months on probation. Id. at 6–7; see Ex. B to

ORDER - 1

1  Steveson Decl. (docket no. 9-2).  This conviction became "a charge for deportation," and,

2  in 1998, an immigration judge denied petitioner's application for asylum and withholding

3  of removal and ordered him removed to the Republic of Kazakhstan.  See Pet. at 7

4  (docket no. 1) & Ex. 4 (docket no. 1-4); Ex. B to Steveson Decl. (docket no. 9-2).  The

5  order of removal became final in 2003.  See Pet. at 7 (docket no. 1); Ex. C to Steveson

6  Decl. (docket no. 9-3).  As of 2006, a travel document that was necessary for petitioner's

7  removal to the Republic of Kazakhstan could not be obtained.  See Andron Decl. at ¶ 7

8  (docket no. 8).

9        Prior to his re-detention in October 2025, petitioner had been at liberty pursuant to

10  orders of supervision ("OSUPs") issued in 2005, 2006, and 2009, see Pet. at 7 (docket

11  no. 1) & Ex. 5 (docket no. 1-5); Ex. E to Steveson Decl. (docket no. 9-5), and he had

12  been granted employment authorization, see Pet. at 7 (docket no. 1) & Ex. 6 (docket

13  no. 1-6).  As required by the OSUPs, petitioner has diligently reported on a periodic basis

14  to U.S. Immigration and Customs Enforcement ("ICE"), with no determination that he

15  represents a flight risk or a danger to the community.  See Pet. at 7–8 (docket no. 1) &

16  Ex. 7 (docket no. 1-7); see also Exs. E, F, & G to Steveson Decl. (docket nos. 9-5, 9-6, &

17  9-7).[1]

---

[1] Respondents have accused petitioner of failing to check in as scheduled on October 15, 2025, see Andron Decl. at ¶ 9 (docket no. 8), but petitioner has provided documentary evidence that he reported as required on October 15, 2025, and was given a next report date of October 15, 2026, see Pet. at Ex. 7 (docket no. 1-7 at 2).

ORDER - 2

1       On October 27, 2025, petitioner was arrested "during an operation in Portland, Oregon" by a U.S. Customs and Border Protection Special Reaction Team. See Ex. C to Steveson Decl. (docket no. 9-3). No narrative concerning the arrest has been provided, see id., but the materials submitted by respondents support the reasonable inference that petitioner was not provided any advance notice or pre-deprivation hearing and that the alleged reason for revoking the operative OSUP, namely a 2019 conviction in Clackamas County, Oregon for driving under the influence of intoxicants ("DUI"), was conceived only after the fact. See Exs. C & H to Steveson Decl. (docket nos. 9-3 & 9-8). Indeed, the Notice of Revocation of Release that refers to the alleged DUI conviction is dated the same day as petitioner's arrest, and it was not served on petitioner until he was already in custody. See Ex. H to Steveson Decl. (docket no. 9-8).

      Since October 28, 2025, petitioner has been detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Andron Decl. at ¶ 10 (docket no. 8). On December 19, 2025, ICE officials received, in response to the travel document request completed by petitioner, an email from the Consulate General of the Republic of Kazakhstan indicating that petitioner "does not currently have valid identity documents confirming his citizenship" and thus, a travel document could not be issued. See id. at ¶¶ 11–12. Petitioner has separately been provided by the Consulate General a document informing him that he is not a citizen of the Republic of Kazakhstan. Pet. at 8 (docket no. 1) & Ex. 8 (docket no. 1-8). As a result of the 1991 dissolution of the U.S.S.R., roughly two years after petitioner legally immigrated to the United States, and almost a

ORDER - 3

1  dozen years before the order of removal at issue became final, petitioner is now a
2  stateless person.
3  **Discussion**
4        With one exception relating to petitioner's request for injunctive relief against
5  third country removal, see Return at 13 (docket no. 7), which will be addressed later,
6  respondents do not challenge the Court's jurisdiction.  The Court has authority to grant a
7  writ of habeas corpus to an individual who is in custody "in violation of the Constitution
8  or law or treaties of the United States."  See 28 U.S.C. § 2241(c)(3).
9  **A.     Re-Detention in Violation of Due Process**
10       As consistently recognized in this District, whether the manner in which an alien
11 was re-detained comported with due process should be analyzed pursuant to the three-
12 part standard set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See G.S. v.
13 Hermosillo, No. C25-2704 TSZ, 2026 WL 179962, at *2 (W.D. Wash. Jan. 22, 2026)
14 (collecting cases).  All three Mathews factors weigh in petitioner's favor:  (i) he has a
15 protected liberty interest in not remaining in custody at NWIPC, (ii) the absence of pre-
16 deprivation procedures created an unacceptably high risk of erroneous deprivation, and
17 (iii) the governmental interest in petitioner's re-detention without a hearing is minimal or
18 non-existent.  See id. at *3; P.T. v. Hermosillo, No. C25-2249, 2025 WL 3294988, at *2–
19 4 (W.D. Wash. Nov. 26, 2025); see also Yildirim v. Hermosillo, No. C25-2696, 2026 WL
20 111358, at *4 (W.D. Wash. Jan. 15, 2026) (noting that any factual disputes related to the
21 justification for the petitioner's re-detention should have been resolved at a pre-
22 deprivation hearing, not after-the-fact during habeas proceedings).  For over two decades,
23

ORDER - 4

1  petitioner has been in regular contact with ICE, and for roughly six years prior to his
2  recent re-detention, ICE officials were unconcerned with petitioner's alleged DUI
3  conviction.  Respondents have not provided any information about the circumstances of
4  petitioner's arrest, and "the type of post-hoc rationalization . . . that has been displayed in
5  this case demonstrates exactly why the pre-deprivation hearing required by *Mathews* is
6  necessary; it serves as a crucial bulwark against the unfettered disregard of individual
7  liberty interests." *G.S.*, 2026 WL 179962, at *3.

**B.    Post-Removal-Order Detention**

After a removal order becomes final, ICE is authorized to detain a noncitizen, but not indefinitely.  *See Zadvydas v. Davis*, 533 U.S. 678, 698–99 (2001); *see also* 8 U.S.C. § 1231(a).  If, after the presumptively reasonable six-month period following entry of a final removal order, the individual at issue cannot be removed from the United States, the noncitizen is entitled to habeas relief if (i) he or she provides "good reason to believe" that "no significant likelihood" exists of "removal in the reasonably foreseeable future," and (ii) the habeas respondent fails to rebut this contention.  *See Zadvydas*, 533 U.S. at 701.  In this matter, respondents do not dispute that the presumptively reasonable six-month post-removal-order period has long since expired, and they have made no effort to refute petitioner's strong showing that no significant likelihood exists of his removal to the Republic of Kazakhstan in the reasonably foreseeable future (or ever).[2]

---

[2] Respondents' reliance on 8 C.F.R. § 241.13(i), which governs the re-detention of noncitizens who are subject to a final order of removal, is misplaced.  Re-detention under this regulation requires "an individualized determination by ICE that, based on changed circumstances, removal

ORDER - 5

C.  **Third Country Removal**

Although respondents have not articulated any intent to remove petitioner to a third country, petitioner seeks an order enjoining respondents from removing petitioner to a country other than the Republic of Kazakhstan and/or enjoining them from doing so without due process.  See Pet. at 29–30 (docket no. 1).  Respondents contend that the Court lacks jurisdiction with respect to petitioner's third-country-removal claim because he has not presented the requisite case or controversy.  Return at 13–14 (docket no. 7).  They argue that the due process relief petitioner requests has already been addressed by existing U.S. Department of Homeland Security ("DHS") policy.  Id. at 13 (citing a July 9, 2025, Memorandum to All ICE Employees, attached as Ex. 9 to Pet. (docket no. 1-9)).  The procedures set forth in the memorandum, however, "fall far short" of what due process requires.  See Elshourbagy v. Bondi, No. 25-cv-2432, 2025 WL 3718993, at *8 (W.D. Wash. Dec. 23, 2025).  Moreover, the conduct leading to petitioner's current detention at NWIPC does "not inspire confidence" that, absent a court order, respondents will afford petitioner process that is consistent with their own policies and regulations, applicable statutes, and the United States Constitution.  See id. at *8–9.  Thus, although

---

has become significantly likely in the reasonably foreseeable future." Phongsavanh v. Williams, --- F. Supp. 3d ---, 2025 WL 3124032, at *3 (S.D. Iowa Nov. 7, 2025) (citing Kong v. United States, 62 F.4th 608, 619–20 (1st Cir. 2023)).  Respondents do not even suggest that ICE made the requisite finding, i.e., that petitioner's removal to the Republic of Kazakhstan had become likely in the reasonably foreseeable future.  Absent such determination, petitioner's re-detention was predestined to exceed the temporal limits outlined in Zadvydas, and his arrest, which was not tethered to any recent criminal behavior or community care-taking function, served no legitimate governmental purpose.

ORDER - 6

1  the issue of whether petitioner may be removed to a third country is not yet ripe, his

2  request that respondents be directed to provide him advance notice and a meaningful

3  opportunity to be heard in reopened removal proceedings states a claim over which the

4  Court has Article III jurisdiction.  See, e.g., Revenko v. Bondi, No. 25-cv-2149, 2025 WL

5  4070027, at *3 (W.D. Wash. Dec. 29, 2025) ("[I]f DHS seeks to remove [a p]etitioner to

6  a third country, it must move to reopen Section 240 removal proceedings, and a hearing

7  must be held before an immigration judge so the petitioner can apply for relief as to the

8  specific country of removal.").

9        Respondents argue that the Court should decline to exercise any jurisdiction

10  because petitioner is a member of the class certified in D.V.D. v. U.S. Dep't of Homeland

11  Sec., 778 F. Supp. 3d 355 (D. Mass. 2025), and cannot seek individual relief in this

12  separate action.  See Return at 14–15 (docket no. 7).  With regard to petitioner's request

13  that respondents be required to provide him due process before removing him to a third

14  country, no overlap with the class claim at issue in D.V.D. exists; D.V.D. involves claims

15  under the Convention Against Torture.  See Nguyen v. Scott, 796 F. Supp. 3d. 703, 730

16  (W.D. Wash. 2025).  With regard to petitioner's request that respondents be barred from

17  removing him to a third country, such claim is not ripe and the Court declines to address

18  it.  See Van Huynh v. Bondi, No. C25-2093, 2025 WL 3534210, at *5–6 (W.D. Wash.

19  Dec. 10, 2025); Tran v. Bondi, No. C25-1897, 2025 WL 3140462, at *4 (W.D. Wash.

20  Nov. 10, 2025).

21  / / /

22  / / /

23

ORDER - 7

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The petition for a writ of habeas corpus, docket no. 1, is GRANTED, and respondents shall immediately RELEASE petitioner Yury Nikolay Korotkikh from custody at the NWIPC;

(2) Within twenty-four (24) hours of the entry of this Order, respondents shall file a declaration confirming that petitioner has been released from custody;

(3) Respondents shall not re-detain petitioner without at least seven (7) days' advance written notice and a pre-deprivation hearing before a neutral decisionmaker;

(4) Respondents shall reinstate the OSUP issued in 2009, with the same conditions previously imposed, and petitioner shall comply with those conditions unless they are amended after providing petitioner at least thirty (30) days' advance written notice and an opportunity to be heard;

(5) Respondents are prohibited from removing petitioner to a country other than the Republic of Kazakhstan without at least seven (7) days' advance written notice and an opportunity to respond in a reopened removal proceeding before an immigration judge;

(6) Petitioner's request for an order barring any third-country removal is STRICKEN without prejudice as unripe; and

(7) The Clerk is directed to enter judgment consistent herewith after the declaration required by Paragraph 2, above, has been filed and to send a copy of this Order and the Judgment to all counsel of record.

IT IS SO ORDERED.

Dated this 23rd day of February, 2026.

                                                Thomas S. Zilly
                                                United States District Judge